# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA ANGULO, | Case No. 1:07-cv-01681-TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |
| Defendant. | |

Plaintiff Rebecca Angulo ("Claimant" or "Plaintiff") seeks judicial review of an administrative decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. 416(i), 423(d), and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on November 16, 2007, and her opening brief on September 19, 2008. (Docs. 1, 17). The Commissioner filed his opposing brief on October 2, 2008. (Doc. 18). Claimant filed her reply brief on October 8, 2008. (Doc. 19).

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an order dated May 27, 2008 and docketed May 28, 2008, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 14).

1

## JURISDICTION

On January 6, 2004, Claimant filed an application for SSI benefits. (Administrative Record ("AR") 66-69). After Claimant's application was denied initially and on reconsideration, Claimant and his counsel requested a hearing before an Administrative Law Judge ("ALJ"), and on May 31, 2006, she appeared before ALJ Richard D. Wurdeman. (AR 253-275). On October 19, 2006, the ALJ issued a determination that Claimant was not disabled at any time through the date of hearing. (AR 20-28). The Appeals Council denied a request for review on April 27, 2007. (AR 9-12). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).[1]

## STATEMENT OF FACTS

A. <u>Testimony</u>.

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by Claimant and the Commissioner, and will only be summarized here.

Claimant testified at the hearing that she was born on April 29, 1959. (AR 239). She obtained a GED and associate degree in general education, and used to work as a school clerk and, for eleven years, as a campus security guard. (AR 239-240, 257). Claimant was last employed in 200 and she stopped looking for work in 2003. (AR 241). Claimant indicated that she took care of herself personally on a daily level, but that her mother cooked her meals for her, and that she did no household chores. (AR 243; 247). Claimant testified that she can walk for fifteen minutes before resting (AR 249), that she could sit for a similar length of time until her back begins to hurt her (AR 250), that she can stand for about twelve minutes (AR 250), and that she can concentrate for ten to fifteen minutes at a time. (AR 252).

The vocational expert, Cheryl Chandler, testified that Claimant's past work as a security guard as semi-skilled and light to medium, while her work as a school clerk was semi-skilled and light. (AR 257). The ALJ then asked Chandler whether a hypothetical person with similar

---

[1] The initiation of an appeal in the district court must be commenced within sixty days of the Appeals Council's decision. 42 U.S.C. § 405(g). As mentioned, on June 27, 2007, Claimant timely filed this action. (Doc. 1).

2

restrictions to Claimant's–i.e., capable of lifting ten to fifteen pounds, who could not walk or stand for prolonged periods of time, who could maintain attention and concentration to carry out one to two step simple instructions, who is able to interact with co-workers, supervisors, and the general public, but who could not carry out an extensive variety of technical and/or complex instructions–could find employment. (AR 258). Chandler indicated that Claimant could perform the "entire world of unskilled work at...all exertional levels" as defined by the Medical-Vocational Guidelines. (AR 258). Chandler testified that this hypothetical person would not be able to perform the past relevant work in which Claimant had been engaged. (Id.).

B. Medical Evidence.

Both parties agree that Claimant's residual functional capacity with respect to her physical impairments and their work-related functional limitations is not germane to the case and that only Claimant's mental health is relevant. (Doc. 17, p. 3; Doc. 18, p. 2). Regarding Claimant's mental health, Dr. John Janda, M.D., referred Claimant to a psychiatrist after Claimant complained of depression and the inability to function. (AR 181-185). The psychiatrist placed Claimant on anti-depressant medication and Claimant continued that treatment from October 1, 2002 until June 3, 2003. (AR 68, 154, 156, 162, 164, 176, 180). In 2004 Claimant reported to Dr. Janda that she felt "better mentally" and wished to return to work but that the foreman had inquired about what work she could do and what work she could not do. (AR 148-149).

In May 2005, Claimant was evaluated by Ekram Michiel, M.D., a psychiatrist, who diagnosed Claimant with a depressive disorder. (AR 139-141). The results of Michiel's mental status examination of Claimant was normal, despite a depressed mood. (AR 140). Claimant's daily activities were normal as well and she was able to "shop, cook and do household chores with help from her sister." (AR 140). Michiel gave Claimant a Global Assessment of Functioning score of 65 and opined that she would be able to maintain attention and concentration and to perform one or two step simple job instructions, but would be unable to perform "an extensive variety of technical and/or complex instructions. (AR 141).

State psychiatrist, Archimedes Garcia, M.D., reviewed Claimant's medical records in June 2005 and opined that her mental impairment was characterized by mild restrictions on daily living,

3

maintaining social functioning, and maintaining concentration, persistence and pace, with no evidence of episodes of decompensation. (AR 218). Garcia also opined that Claimant would have between no significant and moderate difficulties in remembering and carrying out detailed instructions, but could perform simple repetitive tasks. (AR 214). A second state physician, Allen Middleton, M.D., reviewed Claimant's medical records and confirmed Garcia's opinion. (AR 212, 218-220).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401 (1971). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

For purposes of Titles II and XVI of the Social Security Act (the "Act"), a claimant seeking disability benefits must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that he "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To be eligible for disability insurance benefits, a worker must, among other things, be insured for disability purposes and be disabled on that date. 42 U. S. C. § 416(i). Title 20 C.F.R. § 404.101(a) provides, in pertinent part, that an applicant's "insured status" is a basic factor in determining if someone is entitled to disability insurance benefits and that, if the person seeking those benefits is neither fully nor currently insured, no benefits are payable.

1. <u>The Initial Disability Determination</u>.

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled under Titles II and/or XVI of the Act. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements, i.e. the impairment is expected to result in death or continuously lasted or be expected to last at least twelve months. If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 426.920(a)(4)(ii), 426.920(c).

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to

be so severe as to preclude substantial gainful activity.  See 20 C.F.R. Pt. 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled.  20 C.F.R. 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  If the impairment does not satisfy those requirements, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform his previous work, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f); see also Mathews v. Shalala, 10 F. 3d 678, 681 (9th Cir. 1993).

The initial burden of proof rests upon the claimant to establish that he "is entitled to the benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted).  In terms of the five step sequential evaluation process, the Ninth Circuit has held that "[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original).  The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in his previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

2.  Subsequent Review: Medical Improvement And Cessation of Disability Benefits.

The Commissioner must follow different sequential steps exist to review whether, once the claimant has been found eligible for SSI benefits, his medical condition improves sufficiently to

cease his disability payments. See 20 C.F.R. §§ 416.994(b)(5).[2] At the first step, the Commissioner determines whether the severity of the claimant's impairment(s) meet or equal one of the listed impairments acknowledged to preclude substantial gainful activity. 20 C.F.R. Pt. 404 Subpt. P App. 1l 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i). If the impairment meets or equals one of the listed impairments, the claimant will remain eligible for disability benefits.

If the claimant does not satisfy step one, the Commissioner determines at step two whether the claimant's condition has improved, i.e., it is less severe. 20 C.F.R. §§ 404.1594(f)(3), 416.994(b)(1)(i). At step three, the Commissioner ascertains whether the medical improvement is related to an increase in the claimant's RFC "based on the impairment(s) at the time of the most recent favorable medical determination." 20 C.F.R. 404.1594(f)(4), 416.994(b)(5)(iii). If the Commissioner concludes that the claimant has not experienced any medical improvement or that the medical improvement does not comply with the foregoing, he continues to step four.

At step four, the Commissioner must decide if an exception to medical improvements applies. 20 C.F.R. §§ 404.1594(f)(5), 416.994(b)(3)(4) and (5). Depending on whether and which exception applies, the claimant's disability will end, continue, or the analysis will proceed to the next step. 20 CFR §§ 404.1594(f)(5), 416.994(b)(5)(iv). At step five, the Commissioner must determine whether all of the claimant's combined impairments are severe and how they impact the claimant's ability to function. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). If the step five findings indicate that, considering the claimant's combined impairments, he can perform basic work, he no longer will be deemed disabled. If he cannot, the analysis proceeds to step six and assesses whether the claimant's RFC, based on his current impairments, enables claimant to perform past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi). If the claimant is able to do so, his disability will be found to have ended. If not, at step seven, the Commissioner must decide whether, in light of the claimant's RFC, age, education, and past work experience, the claimant he can do other work in the

///

---

[2] This section of 20 C.F.R. § 416.994 outlines the steps that the ALJ is to address when the claimant applied for, and was granted, disability benefits under Title XVI of the Act. Regulation 20 C.F.R. § 404.1594 is almost identical to § 416.994, but applies to individuals previously granted benefits under Title II (disability insurance benefits) of the Act. Compare 20 C.F.R. § 416.994(b)(5) with 20 C.F.R. § 404.1594(f).

7

economy. If the claimant can perform such work, his disability will end. If not, the claimant's disability will continue. 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

## **ADMINISTRATIVE FINDINGS**

Here, the ALJ determined that Claimant met the insured status requirements of the Act through March 31, 2008. (AR 13). At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since her alleged onset date. (Id.). At step two, the ALJ determined that Claimant suffered several severe impairments, including, inter alia, depressive disorder, degenerative disk disease of the cervical spine, and mild radiculopathy. (Id.).

At step three, the ALJ found that Claimant's severe impairments did not meet or equal any listed impairment. (Id. at 15). The ALJ found that Claimant had the residual functional capacity ("RFC") to lift and carry 10 to 15 pounds with no excessive walking or prolonged standing, and is limited to performing simple repetitive one- and two-step tasks. (AR 15).

At step four, the ALJ found that, given Claimant's RFC, she could not perform any past relevant work." (AR 17). At step five, the ALJ found that a significant number of jobs existed in the economy that Claimant could perform, given her RFC. (AR 17). The ALJ concluded that Claimant was not "disabled" within the meaning of the Act from May 3, 2002 through the date of his decision. (AR 18).

## **ISSUES**

Claimant's opening brief raises the following two issues:

(1) The ALJ's findings at steps three, four, and five are not supported by substantial evidence given his failure to evaluate the Claimant's mental impairment in accordance with the regulation setting forth a special review technique; and,

(2) The ALJ's finding that Claimant is not disabled was not supported by substantial evidence because the vocational expert's testimony did not cite specific occupations and their incidences and because the ALJ's decision did not acknowledge that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles.

(Doc. 17).

///

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

A. The ALJ Did Not Err In Evaluating Claimant's Mental Impairment By Explicitly Relying On The Analysis Of Medical Experts.

Claimant first contends that the ALJ's determinations at steps three, four, and five are not supported by substantial evidence because the ALJ failed to evaluate Claimant's mental impairment in accordance with the regulation setting forth a specific review technique. (Doc. 17, p. 5). Defendant argues that the ALJ explicitly incorporated the uncontroverted findings of the medical experts in assessing Claimant's mental impairment. (Doc. 18, p. 8). Alternately, Defendant asserts that any error was harmless because the ALJ adequately considered Claimant's mental impairment and limitations at all stages of his decision, including the hypothetical questions posed to the vocational expert. (Id.). For the reasons set forth below, the Court agrees with Defendant.

When a colorable claim of mental impairment exists, the ALJ must follow a special evaluation process for such impairments as set forth in 20 C.F.R. §§ 404.1520a (DIB) and 416.920a (SSI). See Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000).[3] In doing so, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a medically determinable impairment. If one exists, the ALJ must specify the symptoms, signs and laboratory findings that substantiate the presence of the impairment. 20 C.F.R. § 404.1520a(b)(1); 20 C.F.R. § 416.920a(b)(1)(SSI).

Importantly, under the special evaluation technique specifically applicable to mental impairments, the ALJ must rate the degree of functional limitation that is experienced by claimants.

---

[3] The requirement of appending a Psychiatric Review Technique Form to the ALJ's decision was eliminated by amendments to the regulations that became effective on September 20, 2000. Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001). However, the ALJ's written decision still must make specific findings as to the degree of limitations in each functional area described in 20 C.F.R. § 404.1520a(c) and its SSI equivalent, section 416.920a(c). Mersman, 161 F. Supp. at 1086; see Selassie v. Barnhart, 203 Fed. Appx. 174 (9th Cir. 2006)(unpublished)(recognizing the 2000 regulatory revisions but holding that the ALJ nevertheless has the obligations to follow those regulations in making the mental health determination)..

9

20 C.F.R. § 404.1520a(b)(2)(DIB); 20 C.F.R. § 416.920(a)(b)(2)(SSI). This *rating* process covers four broad functional limitation areas: (1) activities of daily living, (2) social functioning; (3) concentration, persistence or pace and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3)(DIB); 20 C.F.R. § 416.920a(c)(3)(SSI). For the first three functional areas (daily living, social functioning, concentration), a five-point scale is used: none, mild, moderate, marked, and extreme. In rating the fourth functional area (episodes of decompensation), a four-point scale is used: none, one or two, three, four or more. 20 C.F.R. 404.1520a(c)4)(DIB); 20 C.F.R. § 416.920a(c)(4)(SSI).

The aforementioned rating process is necessary because, in performing step three of the sequential analysis, the ratings come into play in the ALJ's determination as to whether a severe mental impairment is or is not a "Listed" impairment. See e.g., 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(discussing mental impairment ratings as used in the Listings). Specifically, as set forth in the regulations pertaining to "Evaluation of mental impairments":

> "(d) After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s).
>
> (1) If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe . . . .
>
> (2) If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder. . . ."

20 C.F.R. § 416.920a(d)(1)-(2). Critically, the ALJ must also *document* application of the special evaluation technique applicable to mental impairments. 20 C.F.R. § 404.1520a(e)(DIB); 20 C.F.R. § 416.920a(e)(SSI)("At the administrative law judge hearing . . . we will document application of the technique in the decision"); 20 C.F.R. § 416.920(a)(e)(2)("The decision must include a specific finding as to the degree of limitation in each of the functional areas"). See Mersman v. Halter, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001)(regulations "require[ ] the ALJ's written decision to make a specific finding as to the degree of limitations in each functional area").

///

///

Here, as discussed above, the ALJ's determination at step three regarding Claimant's mental impairment commenced with a review of Dr. Garcia's findings, specifically referencing the PRTF that rates Claimant's mental impairment in the first three categories as "mild," and indicates that Garcia could not rate Claimant in the fourth category because of "insufficient evidence." (AR 218; 16). The ALJ then discussed the specific ratings in each of those first three categories. (AR 16). Next, the ALJ reviewed the opinion of Dr. Michiel, the examining psychiatrist, who found Claimant to have a Global Assessment Functioning ("GAF") of 65 as well as an ability to maintain attention and concentration and to carry out one- or two-step simple job instructions, relate to and interact with co-workers, supervisors, and the general public, but who could not carry out complex instructions. (AR 17). The ALJ then discussed the relevance of a GAF score of 65, indicating that it demonstrated "mild" symptoms, "but generally functioning pretty well, has some meaningful interpersonal relationships as defined by the DSM-IV-TR...." (Id.). The ALJ concluded by indicating, "Dr. Michiel's opinion is most consistent with the overall evidence, including the State Agency limitations, and is given more weight, since Dr. Michiel was an examining source." (AR 17)(Emphasis supplied).

In the Court's view, these findings are sufficient to comply with the regulations regarding mental impairment. While the ALJ could have made his findings conform more expressly and explicitly to the SSR's, nevertheless the ALJ followed the spirit, if not the express letter, of the applicable regulations, as set forth above, in evaluating, rating and documenting Claimant's alleged mental impairments. The obvious intent of the regulations is to ensure that the ALJ properly takes into account all of the relevant mental health evidence in making his determinations and also to provide this court with a sufficient record upon which to review those determinations. Magic words are not required.

As the Ninth Circuit has previously observed in a different context, "It is true that the ALJ did not recite the magic words...But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion," assuming of course, that "those inferences are there to be drawn." Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Similarly, in this case, the ALJ could have expressly

indicated in his determination that he was formally adopting or incorporating by reference Dr. Garcia's ratings as contained in his PRTF, or he could have expressly enumerated each category and then applied his own numerical rating based on the medical evidence. Sadly, the ALJ did not utter those "magic words." However, he did methodically and carefully review the evidence of Claimant's mental impairment, including the PRTF, in each of the four relevant categories, and he expressly relied on that evidence, including the PRTF, in concluding that Claimant's mental impairment was "mild" in each of those categories.

The Court's reading of the applicable regulations is that they require no more. Certainly, they do not require a slavish adherence to the regulations in all particulars, especially when such adherence comes at the expense of common sense and reason. Here, the ALJ made a concerted effort to comply with the regulations, and a fair reading of the ALJ's determination indicates that, in substance if not in form, he was successful in that effort. In the Court's view, the ALJ's findings and the medical evidence in this record are sufficient both to support a conclusion that the ALJ considered all of the appropriate factors in making his determination regarding Claimant's mental impairment and to permit this Court to review that determination for legal error.

B. <u>The ALJ's Determination That Claimant Was Not Disabled Was Supported By Substantial Evidence.</u>

Claimant next contends that the ALJ erred at step five in determining that Claimant was not disabled because the vocational expert's testimony did not cite specific occupations and their incidences in the economy within the light exertional range and because the ALJ's decision did not acknowledge that the expert's testimony was inconsistent with the DOT. (Doc. 17, p. 11). Defendant contends that the ALJ properly relied upon the Medical-Vocational Guidelines ("the grids") alone to resolve Claimant's claim because it was clear that her nonexertional limitations did not significantly erode the relevant job base. (Doc. 18, p. 10). The Court agrees with Defendant.

At the outset, it appears that Claimant's argument is premised almost entirely on the fact that the ALJ's determination mistakenly refers, in the discussion at step five, to Rule 202.21, i.e., light work, rather than to Rule 201.21, i.e., sedentary work. The evidence demonstrates that Claimant has some significant limitations within the full range of light work that would require additional

testimony from a vocational expert.  Thus, Claimant argues, the vocational expert should have testified regarding specific jobs available in the economy at the light work level for which Claimant was suited given her limitations.

The Court, however, agrees with Defendant that the ALJ's reference to Rule 202.21 was an inadvertent mistake and that he intended to refer to Rule 201.21.  The entire record supports Defendant's contention that the mistake was inadvertent or typographical rather than substantive: the ALJ's hypotheticals to the vocational expert ("VE") were directed toward sedentary work, the VE's responses were directed toward sedentary work, and the ALJ's written findings, with this one exception, expressly reference the VE's opinion that Claimant could perform "the entire world of unskilled *sedentary* work."  (AR 18; 258-261)(Emphasis supplied).  Moreover, at no point in either the hearing, the hypotheticals posed to the VE, or in the written determination does the ALJ suggest that he believed Claimant was capable of performing the full range of light work.  Accordingly, the Court will assume, based on the entire record, that the ALJ's reference to Rule 202.21 was an inadvertent error and that he meant to reference Rule 201.21.

With that in mind, it is clear that the ALJ properly relied on the grids for his determination that Claimant was not disabled, and did not require the testimony of a vocational expert.  The grids are a matrix system for handling claims that involve substantially uniform levels of impairment.  See 20 C.F.R. Part 404, Subpt. P, App. 2.  The grids give a finding of disabled or not disabled for various combinations of age, education, and work experience and provide a uniform conclusion about the availability of jobs for all persons whose medical condition is categorized in the same way.  See id.  The grids categorize jobs by their physical-exertional requirements and consist of three separate tables, one table for each category, i.e., sedentary work, light work, and medium work.  See 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00.  If a claimant is found able to work the full range of heavy work, this is "generally sufficient for a finding of not disabled." 20 C.F.R. Part 404, Subpt. P, App. 2, § 204.00. Each grid presents various combinations of factors relevant to a claimant's ability to find work, including claimant's age, education, and work experience.  For each combination of these factors, the grid directs a finding of either disabled or not disabled based on the number of jobs

in the national economy in that category of physical-exertional requirements. See id. This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. See Heckler v. Campbell, 461 U.S. 458, 460-462, 103 S. Ct. 1952 (1983)(discussing the creation and purpose of the grids).

The grids, however, may be used only where they "completely and accurately represent a claimant's limitations." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If a claimant suffers from non-exertional limitations, the ALJ may not apply the grids because they are based on strength factors only. See 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(b). In cases where the grids are "not fully applicable," the ALJ may meet his burden under step five by propounding to a vocational expert a hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995); Magallanes, 881, 881 F.2d at 756. Put conversely, the ALJ may rely solely on the grids, without the testimony of a vocational expert, to resolve cases where it is clear that a claimant's non-exertional limitations do not significantly erode the relevant job base. See SSR 83-14; Campbell, 461 U.S. at 462, fn. 5; Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983)("Campbell expressly rejected the necessity of [making a finding about the availability of specific jobs for which the claimant is capable of performing] where the 'Grids' apply").

A vocational expert is required and the grids are inapplicable "when a non-exertional limitation is 'sufficiently severe' so as to significantly limit the range of work permitted by the claimant's exertional limitations." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); Landa v. Astrue, 283 Fed. Appx. 556 (9th Cir. 2008)(unpublished). Claimant implicitly argues that because the ALJ inadvertently referenced Rule 202.21 rather than 201.21, and because it is further clear from the record that Claimant cannot perform the full range of jobs at the light functional level, the ALJ was required to elicit testimony from a VE regarding specific jobs available at the light level. As discussed above, however, the Court interprets the ALJ's determination to be that Claimant is limited to the sedentary functional level, not the light level. Therefore, the issue is whether the ALJ

was then required to elicit testimony regarding specific jobs available in the economy at the sedentary level, rather than merely relying on the grids. The evidence in the record substantially supports the ALJ's findings regarding Claimant's impairments and limitations, both physical and mental, and thus Claimant fell squarely within the grid requirements for sedentary work. Accordingly, for the reasons discussed above regarding the proper use of the grids, the Court agrees with Defendant that the ALJ correctly relied on the grids and was not required to support his findings with additional testimony from the VE regarding specific jobs..

Even if, arguendo, Claimant's argument were not premised solely on this one inadvertent error by the ALJ, the result would be the same. The fact that the ALJ determined that Claimant's mental impairment, mild radiculopathy, and degenerative disc disease were "severe" impairments at an earlier step in the disability-determination process, does not, by definition, mean that those impairments constitute significant non-exertional limitations such that the testimony of a VE is required and exclusive reliance on the grids is inappropriate. That argument has been squarely foreclosed by the Ninth Circuit. Hoopai, 499 F.3d at 1076. In Hoopai, the Ninth Circuit held that the satisfaction of the "threshold requirement that a claimant prove her limitations are severe is not dispositive of the...determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the assistance of a vocational expert." Id..

Here, substantial evidence supports the ALJ's determination that Claimant's mental impairment was not a sufficiently severe non-exertional limitation that required the assistance of a vocational expert. As discussed previously, the ALJ implicitly adopted the findings of Dr. Garcia in his PRTF that Claimant's mental impairment in the first three categories was "mild," and that insufficient evidence existed to support any rating in the fourth category. Moreover, the other medical testimony was consistent with a categorization of the severity of claimant's mental impairment as "mild." Regarding Claimant's other physical impairments, e.g., mild radiculopathy, degenerative disc disease, etc., those exertional limitations were taken into consideration in both the VE's testimony and the use of grids relating in rating Claimant for work at the sedentary rather than

15

light functional level. (AR 18).

Under such circumstances, the ALJ did not require the testimony of a VE regarding specific jobs within the sedentary range since substantial evidence supported his implicit finding that non-exertional factors did not limit or erode the job base for work at the sedentary level. Thus, the VE's testimony simply acted to further confirm the ALJ's determination regarding disability and provided evidence that Claimant's case fell within the general pattern of the grids for sedentary work. (AR 18, 259-260). More was not required.

Finally, Claimant, relying on the Eighth Circuit's decision in <u>Lucy v. Chater</u>, 113 F.3d 905, 908 (8th Cir. 1997), argues that the VE's testimony that Claimant's RFC, including the limitation to simple one- and two-step tasks, includes the entire "world of unskilled sedentary" is "demonstrable false" and "departs from the DOT without a reasonable explanation." (<u>Id</u>. at p. 13). The Court disagrees.

As Defendant correctly observes, this argument has been rejected by many of the courts within the Ninth Circuit, including this Court. In <u>Meissl v. Barnhart</u>, 403 F. Supp.2d 981, 983-985 (C.D.Cal. 2005), for example, the Central District of California held that the limitation to simple and repetitive tasks was consistent with jobs requiring a Level 2 reasoning in the DOT. In <u>Meissl</u>, the claimant was found to be limited to "simple tasks performed at a routine or repetitive pace." <u>Id</u>. at 982. The court explained that although the Social Security Regulations contained only two categories of abilities in regard to understanding and remembering instructions–either "short and simple" and "detailed" or "complex," the DOT had many more gradations for measuring this ability, and there were six gradations altogether. <u>Id</u>. at 984. For example, level 2 requires application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." DICOT, App. C. The court continued:

> To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

16

Meissl, 403 F.Supp. 2d at 984. Furthermore, the use of the term "uninvolved" along with the term "detailed" in the DOT qualifies it and refutes any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term. Id. The court found that the claimant's RFC must be compared with the DOT's reasoning scale. A reasoning level of one requires slightly less than simple tasks that are in some sense repetitive. For example, such tasks include the jobs of counting cows as they come off a truck or testing pressurized cans by tapping them with a stick. Id. A reasoning level of two, such as in Claimant's case, would encompass an RFC of being able to do "simple and routine work tasks." Id.

Thus, contrary to Claimant's contentions, a limitation to simple repetitive tasks is not inconsistent with Level 2 reasoning ability and therefore the reasoning level of the grid jobs for unskilled sedentary work are not in conflict with the ALJ's determination that Claimant is limited to jobs requiring only a level 2 reasoning ability. E.g., Isaac v. Astrue, 2008 WL 2875879, *3-*4 (E.D. Cal. July 24, 2008)(following Meissl and finding that a limitation to simple job instructions is consistent with Level 2); Salazar v. Astrue, 2008 WL 4370056 , *7 (C.D. Cal. Sept. 23, 2008); Squier v. Astrue, 2008 WL 2537129, *5 (C.D.Cal. June 24, 2008); Howard v. Astrue, 2008 WL 3201221, *1 (C.D.Cal. Aug. 7, 2007).

### CONCLUSION AND ORDER

For the reasons discussed above, this Court finds no error in the ALJ's analysis, which was based on proper legal standards and supported by substantial evidence. Accordingly, this Court HEREBY ORDERS as follows:

1. Claimant's Social Security complaint, Doc. 1, is DENIED; and

2. The Clerk of the Court is DIRECTED TO ENTER judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Rebecca Angulo, and close this case.

IT IS SO ORDERED.

Dated:   **March 26, 2009**                                  **/s/ Theresa A. Goldner**
                                                             UNITED STATES MAGISTRATE JUDGE